OPINION
{¶ 1} Appellant, Patricia C. O'Grady, appeals from a final judgment of the Trumbull County Court of Common Pleas granting her and Fritz C. O'Grady ("appellee") a divorce and dividing marital property. For the reasons set forth below, appellant's first assignment of error is with merit to the extent indicated, and appellant's second assignment of error is not well-taken. We affirm in part, reverse in part, and remand this matter for further proceedings.
 {¶ 2} The parties married on January 23, 1987, and no children were born as issue of the marriage. On November 20, 2002, appellee filed for a divorce on the grounds of incompatibility, and each party subsequently agreed the other was entitled to a divorce. The parties co-habitated until the hearing on this matter, dated October 17, 2002, which involved the division of marital property. The testimony and exhibits presented revealed the following relevant facts.
 {¶ 3} Appellant was fifty-six years old at the time of the 2002 hearing.[1] She had a ninth-grade education, received her GED after marrying appellee, and testified that she had college credits toward an engineering degree. For six years prior to the hearing, she was a part-time tax-preparer at HR Block, working mid-January through April of every year. She collected unemployment from April through October and had no income from November to mid-January. She estimated her HR block income was a maximum of $9,000 per year, and she received about $4,500 per year in unemployment compensation.
 {¶ 4} Prior to her work at HR block, appellant worked a few years in various factories and then for eighteen years as a beef-boner in a slaughterhouse. She testified she had very few typing skills, no experience handling office phones, and otherwise claimed to have no job skills making her employable. She stated, "I know how to prepare taxes on paper. I know how to put them in the computer. I know no other computer programs. I don't know fax machines, copy machines, none of those things."
 {¶ 5} Appellant also testified that she had physical ailments limiting her future earning capacity. She testified she received treatment for her back, a torn rotator cuff, and degenerative neuropathy in her legs. Despite this, appellant testified, "[y]ou know, I am sure I can go back to work."
 {¶ 6} Appellee was seventy-one years old at the time of the hearing, was a high school graduate, and had been employed by Sprint for thirty-five years, working as a switchman, telephone installer, and repairman. He retired in 1993, approximately six years after marrying appellant.
 {¶ 7} Upon his retirement, appellee received a lump-sum payment of "around $20,000," and he testified this money was earned during his employment with Sprint and was "like getting out of the service." Appellee put this money in a Seven Seventeen Credit Union IRA plan, and the account had a balance of $29,131.03 as of October 2000. Appellee testified he withdrew about $600 from this account every six months to pay Trumbull County property taxes for the marital house on Parkman Road, in Warren, Ohio. According to appellee, the account was otherwise untouched.
 {¶ 8} Appellee also bought into a retirement program with Sprint. According to this plan, appellee deposited money that was partially matched pursuant to a company matching program, and the money was invested in private stock accounts with Sprint and its subsidiaries. A statement submitted as a joint exhibit demonstrates a zero beginning balance on January 22, 1987 and a balance of $33,260.42 on February 20, 2002. It appears as if the account was not drawn upon in any way between those dates, and the only contribution or transfer was the initial transfer of retirement funds into the plan.
 {¶ 9} Also, appellee testified that he owned about one hundred shares of Alltel stock, which were separate from the Sprint retirement plan. Appellee explained how he obtained ownership in Alltel. Appellee owned about fifty shares of stock in 360 Cellular (Sprint's subsidiary) as part of his Sprint retirement program. Then, 360 Cellular was sold to Alltel sometime "during the 1990s." The shares then doubled in number, resulting in approximately one hundred shares of Alltel. The information was offered only through appellee's testimony, as no exhibits were presented relating to this stock, the date on which it was acquired, or its value.
 {¶ 10} About ten or fifteen years prior to his marriage to appellant, appellee purchased a house on Denison Avenue, in Warren, Ohio. He continued to own this house during his marriage to appellant.[2]
Appellee testified that the real estate was free and clear of any encumbrances at the time of his marriage to appellant, but appellant testified that her premarital funds were used to pay off the mortgage on this home.
 {¶ 11} In February 1988, the parties met with attorney Lou Vennitti ("Vennitti"). The parties prepared new wills and also executed a deed making the parties joint owners, with survivorship rights, of the property on Denison Avenue.
 {¶ 12} In 1990, the parties purchased the home on Parkman Road, in which they resided until the October 2002 hearing on this matter. No evidence was presented illuminating in whose names either of these homes were mortgaged or in whose names the Parkman Road home was deeded.
 {¶ 13} The purchase price of the Parkman Road home was $32,500. A down payment of $15,000 was made, and the balance of $17,500 was paid later. Appellee testified that he cashed in three IRA checks each in the amount of $2,000 and a life insurance policy valued at $6,000 to help make the $15,000 down payment. The balance was paid from proceeds of the sale of the Denison Avenue house, which sold at approximately $40,000.
 {¶ 14} The only evidence presented relating to the payment of either of these houses included two receipts for cashier's checks. One receipt, dated June 8, 1990, was a receipt for a cashier's check in the amount of $8,000 from both appellant and appellee to Principi realty; appellant testified that this money was from a joint savings account. The other receipt, dated June 18, 1990, was a receipt for a cashier's check from appellee to Principi realty in the amount of $6,500; appellee testified that this amount was generated from cashing in an IRA in his name.
 {¶ 15} After purchasing the Parkman Road house, the parties made changes to the house to make it livable. The house needed a new roof at a cost of $3,000 and a new furnace and water heater at a combined total of $1,000. Appellee testified that he financed these improvements through his IRA, his life insurance, and the sale of the house on Denison Avenue. Later, the parties built a detached garage at a cost of $5,000. This was also financed from the sale of the house on Denison Avenue.
 {¶ 16} Prior to their marriage, the parties purchased a cabin in Tionesta, Pennsylvania. The parties collectively paid $700 for the cabin and stipulated its current value to be $35,500.
 {¶ 17} The parties also owned two vehicles and a four-wheeler ATV. The vehicles included a 1998 Ford pickup truck and a 1998 Ford Contour with purchase prices of approximately $25,000 and $15,000, respectively. Both were paid in full. Appellant testified the car was worth $3,000, and appellee testified that the truck was valued at about $11,000. The ATV was purchased in 1998 and included a trailer; the items together were worth approximately $2,000.
 {¶ 18} Appellee received a pension of approximately $952 per month, Social Security in the amount of approximately $1,000 per month, and a $46 pension per month from IBEW (the Sprint union). After retiring from Sprint, appellee began working part-time, one day per week at Alltel, from which his gross yearly income was approximately $10,000 and netted him about $800 per month. In connection with his Sprint pension, appellee signed an irrevocable document reducing his pension which entitled appellant to receive a widow's pension of $150 per month upon his passing.
 {¶ 19} Prior to marrying appellee, appellant had a retirement plan which was valued at $5,540. The account was liquidated on January 29, 1998. Appellant testified that the amount was put into a mutual checking account and used to pay off the mortgage on the Denison Avenue home; appellant testified at another point in the hearing that the amount was put into a savings account.
 {¶ 20} Appellant also testified that after she married appellee, she sold her pre-marital mobile home for $11,000 (netting a return of about $6,000 after paying off the mortgage); paid $7,000 to pay off her car loan; helped appellee's daughter by financing a "few thousand dollars" toward the daughter's wedding; cashed in the previously-mentioned retirement funds in an amount of $5,540; and "blew a couple thousand" for her own wedding.
 {¶ 21} Appellee also had a Bank One checking account, held in his name only, in the amount of $7,170.12 as of November 2000. Appellee testified this account was opened during his marriage with appellant.
 {¶ 22} Appellee had another Bank One account in connection with monies he received as part of his inheritance and also a Bank One certificate of deposit. The facts surrounding these accounts are not relevant to the instant appeal and will not be discussed herein.
 {¶ 23} The parties also stipulated that during the course of the proceedings appellee advanced $2,000 to appellant with the understanding that it would be applied towards any property settlement.
 {¶ 24} In closing arguments, appellee argued that appellant was capable of working full-time and this should be considered in an award for spousal support; that the parties should divide the Sprint retirement program; that appellant did not want the marital home and appellee should retain the marital home; that appellee was entitled to $47,000 premarital interest in the marital home; that he should retain the campground in Pennsylvania and pay appellee half its value; and that the parties should retain their respective automobiles and that the vehicles were equal in value.
 {¶ 25} Appellant agreed the Sprint retirement plan should be divided between the parties. However, appellant argued that appellee's Alltel stock should also be divided; that appellee's pickup truck was worth more than appellant's Ford Contour and she should receive a cash equivalent; that appellant was entitled to 1/12 (one-twelfth) the value of appellee's Seven Seventeen IRA; that appellant should receive half the value of the marital home and real estate because appellee gifted her half of the prior home for purposes of estate planning; and that appellee's claim for $47,000 in pre-marital interest in the marital home was unfounded. Appellant also argued for spousal support.
 {¶ 26} The trial court issued a judgment entry, dated November 27, 2002, granting the parties a divorce based on incompatibility. The trial court also made various findings of fact and divided marital property. Various findings relevant to the instant appeal include:
 {¶ 27} "5. The Court finds that the parties' marital residence known as 5514 Parkman Road in Warren, Ohio, is worth $115,000 as appraised, and that there is no debt on the property. * * *
 {¶ 28} "Husband made a personal property claim for down payment on the purchase of the property.
 {¶ 29} "The Court finds [from] the testimony of witnesses and the exhibits that Husband's premarital money accounted for all of the $15,000 down payment used to purchase the marital residence. * * *
 {¶ 30} "During the marriage, Husband sold a parcel of real estate on Dennison [sic] in Warren, which he owned before this marriage. He applied $17,500 of the sale proceeds to pay off the then-existing mortgage on 5514 Parkman Road.
 {¶ 31} "The Court finds therefore that Husband is entitled to the first $32,500.00 as return of his separate property from the total value of the Parkman Road residence. The remaining $72,500 is marital and subject to equal division, or $36,250 per party. * * *
 {¶ 32} "8. The Court finds that pursuant to Husband's Exhibit 6 that Husband received a lump sum payment upon his retirement which was based on his entire 35-year working history at his employment.
 {¶ 33} "The Court finds that six of these 35 years were during the marriage (or 17.14%) and consequently Wife is entitled to one half of six/35ths of this account, or 8.57%. * * *
 {¶ 34} "10. Husband has acquired a pension through his employment and is currently in benefit for same.
 {¶ 35} "The Court finds that Husband worked at his employment for 35 years, six of which were marital and Wife is entitled to one half of the coverture portion or 8.57%. * * *
 {¶ 36} "11. Husband acquired a 401(k) plan during his 35-year employment.
 {¶ 37} "This Court finds that Wife is entitled to one-half of the six 35th shares (8.57%) in this account * * *."
 {¶ 38} The trial court further explained that after considering the factors set forth in R.C. 3105.18(C)(1)(a) through (n), it determined that appellant was not entitled to spousal support. The trial court explained its reasoning in great detail, making relevant findings of fact.
 {¶ 39} The trial court's findings included that appellee had a total monthly income of $2,798 and monthly obligations of $1,000, while appellant had a monthly income of $1,125 and monthly obligations of $1,000. The court also found that appellee was age seventy-two and in general good health while appellant was fifty-seven, stated she has health problems and cannot work in a factory, but she admitted she is capable of working full time if she can sit and occasionally move around.[3] No medical evidence was offered.
 {¶ 40} The trial court further determined that, because any award of spousal support would be tax-deductible to the payor and taxable to the payee, appellant would not receive all of any court-ordered award. The trial court found that appellant was capable of working full-time and will receive significant liquid assets generating income for her. Further, according to the trial court, because appellant will likely outlive appellee, appellant will receive a survivorship benefit from appellee's Sprint pension plan. The trial court also noted that because appellee will need to refinance real estate to pay appellant's equity interest, this will increase appellee's indebtedness and reduce his liquid assets. The court found that appellee had been paying $700 per month in spousal support to appellant during the pendency of this litigation, for a total of twenty-two months. In light of the above factors, the trial court concluded that any further order of spousal support was unreasonable.
 {¶ 41} With regard to the property division, the trial court awarded appellee the cabin in Pennsylvania and ordered him to pay appellant $17,750 as her equity interest therein; awarded appellee the marital residence on Parkman Road and ordered him to pay appellant $36,250 as her equity interest therein; ordered that each party retain the motor vehicle then in his possession with appellee paying appellant $4,250 to offset the equities in these vehicles; ordered that appellee retain the four-wheeler and trailer at the Pennsylvania cabin and that appellee pay appellant $1,400 for her equity interest therein; awarded appellee 8.57 percent of appellant's Sprint retirement program; and ordered that appellee retain his certificate of deposit and inheritance account as his separate property.
 {¶ 42} From this decision, appellant filed a timely notice of appeal with this court and submits the following assignments of error for our consideration:
 {¶ 43} "[1.] The trial court erred in dividing the marital assets of the parties.
 {¶ 44} "[2.] The trial court erred in failing to award spousal support to appellant."
 {¶ 45} Before addressing appellant's assignments of error, we will first lay out the appropriate standard of review under which an appellate court must review a trial court's division of property in a divorce action. In a divorce action, a trial court must first characterize all property as either marital property or separate property. R.C. 3105.171(B).
 {¶ 46} Marital property is defined as any real property, personal property, or interest therein that is owned by either or both spouses, including their retirement benefits, that were acquired by either or both of the spouses during marriage. R.C. 3105.171(A)(3)(a)(i) through (ii). See, also, Neville v. Neville, 99 Ohio St.3d 275, 2003-Ohio-3624, at ¶6. Marital property also includes all income and appreciation on separate property that occurred during the marriage due to labor, monetary, or in-kind contribution by either or both spouses. R.C.3105.171(A)(3)(a)(iii).
 {¶ 47} Likewise, separate property includes any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). The commingling of separate property with marital property does not destroy the identity of the separate property as long as the separate property is traceable. R.C. 3105.171(A)(6)(b).
 {¶ 48} It should be noted that property acquired during the marriage is presumed to be marital property. "[T]he party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." Smith v. Smith (Oct. 15, 1999), 11th Dist. No. 98-A-0034, 1999 Ohio App. LEXIS 4862, at 13. See, also, R.C. 3105.171. The trial court is required to make findings as to whether a party requesting the court to classify an asset as separate property has met his burden of proof and successfully traced an asset to separate property. Letson v. Letson
(Sept. 30, 1997), 11th Dist. No. 95-T-5356, 1997 Ohio App. LEXIS 4445, at 11.
 {¶ 49} A "trial court's characterization of property * * * is a question of fact, thus, a reviewing court must apply a manifest weight of the evidence standard of review to the trial court's characterization."Humphrey v. Humphrey, 11th Dist. No. 2000-A-0092, 2002-Ohio-3121, at ¶ 16. In determining whether a trial court's characterization of property is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence the trial court clearly "lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citations omitted.) Boggins v. Boggins (June 26, 2002), 9th Dist. No. 3246-M, 2002-Ohio-3183, at ¶ 7.
 {¶ 50} "Once the property has been characterized as separate or marital property, it is within the discretion of the trial court to fashion an equitable division of the property." Id. at ¶ 8. "In reviewing the equity of a division of property [including retirement benefits and any award of spousal support], one of the basic guidelines an appellate court is bound to follow is that the trial court's judgment cannot be disturbed on appeal absent a showing that the [trial court] abused its discretion * * *." Martin v. Martin (1985), 18 Ohio St.3d 292,294-295. See, also, Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 94;DeChristefero v. DeChristefero, 11th Dist. No. 2001-T-0055, 2003-Ohio-3065. "An abuse of discretion is more than an error of law or of judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, the appellate court is not free to merely substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161.
 {¶ 51} In appellant's first assignment of error, she argues that the trial court erred in dividing the marital assets of the parties. Specifically, appellant contends that the trial court erred by awarding her only 8.57 percent of appellee's Sprint 401(k); by failing to award her fifty percent of appellee's Alltel stock; by failing to award her fifty percent of appellee's Bank One checking account; and by awarding appellee $32,500 in premarital interest in the home on Parkman Road. We disagree, and we will address each of these arguments separately.
 {¶ 52} The trial court did not err by characterizing 6/35ths of appellee's 401(k) plan as marital property and the remaining portion as separate property. Pursuant to R.C. 3105.171(A)(3)(a)(i), marital property includes property owned by either or both spouses or any interest they have in property that was acquired by either during their marriage. Likewise, separate property includes any property that was acquired by one spouse prior to the date of marriage. R.C. 3105.171(A)(6)(a)(ii). The general rule is that pension or retirement benefits earned during the course of a marriage are marital assets. Neville at ¶ 6.
 {¶ 53} In the instant case, the parties were married for six of appellee's thirty-five full-time years at Sprint, and the trial court determined that 6/35ths of the total balance of $43,174.44 was the marital portion of the Sprint 401(k). The court did not err in determining that 6/35ths of the 401(k) was marital property, as this calculation was supported by competent, credible evidence.
 {¶ 54} Appellant, however, argues that the entire amount of $43,174.44 was accumulated during the fifteen and a half year marriage of the parties and is marital property. She bases her assertion on the fact that the beginning balance on the account, dated January 1987 was "$0.00" and by February 2002, the account had reached $43,174.44. Appellant's conclusion is illogical, as it does not follow that this entire sum was generated during the marriage simply because the account had a zero balance in January 1987 and a balance of $43,174.44 in February 2002. The trial court properly considered the amount of time necessary to generate this amount when it found that the 401(k) amount was a lump sum payment based upon appellee's thirty-five-year working history and subsequent retirement.
 {¶ 55} In conclusion, the trial court characterization of 6/35ths of the 401(k)'s balance as marital property was supported by competent, credible evidence and not against the manifest weight of the evidence. The trial court did not abuse its discretion by awarding appellant one half of 6/35ths of the 401(k) balance of the 401(k).
 {¶ 56} Appellant also asserts under her first assignment of error that the trial court erred by failing to award her half of appellee's Alltel stock. At the hearing on this matter, although she did not assert any specific portion which she believed she was entitled to receive, appellant argued that the Alltel stock should be divided between the parties. We disagree.
 {¶ 57} The trial court made no reference to this asset in its judgment entry and failed to characterize this asset as either marital or separate property. However, as our following review of the record reveals, this Alltel stock constituted separate property belonging to appellee.
 {¶ 58} It is undisputed that the 360 Cellular stock held by appellee before the marriage converted into Alltel stock sometime "during the 1990s." This occurred during the parties' marriage and at the point in time when Alltel had purchased 360 Cellular, a subsidiary of Sprint. The record demonstrates that appellee held this 360 Cellular stock prior to his marriage to appellant, and appellant presented no evidence otherwise. Thus, pursuant to R.C. 3105.171, the Alltel stock was directly traceable and constituted appellee's separate property. Accordingly, any failure by the trial court to classify appellant's Alltel stock as marital or separate property was harmless, as there was no basis to divide this stock between the parties. This issue in the first assignment of error is without merit.
 {¶ 59} Also as part of appellant's first assignment of error, appellant contends that the trial court erred by failing to award her half of appellee's Bank One checking account. The record demonstrates the value of this account as $7,170.23 in November 2000 and that appellee admitted that this account was opened during the parties' marriage. No evidence or reference exists in the record demonstrating that appellant argued or raised this issue at the hearing on the matter, and the judgment entry is void of any reference to this account. However, it is apparent that if appellee sought to have this account classified as separate property, appellee had the burden of proof, by a preponderance of the evidence, to trace this asset to separate property. Smith at 13. See, also, R.C. 3105.171. Appellee put forth no testimony or other evidence tracing the account to his separate property. Accordingly, the trial court erred by failing to characterize this account as marital property and by failing to divide the account between the parties. We reverse and remand this matter for the trial court to enter judgment accordingly.
 {¶ 60} Also under appellant's first assignment of error, she argues that the trial court erred by awarding appellee $32,500 in premarital interest in the home on Parkman Road. Appellant asserts that her interest in the home on Parkman Road stems from the interest she claims in the home on Denison Avenue, as the sale proceeds of the Dension Avenue home were used to pay off the mortgage on the Parkman Road home. Specifically, appellant asserts she was entitled to $5,000 premarital interest in the Parkman Road home because $5,000 of her premarital funds were paid toward the mortgage on the Denison Avenue home. Further, appellant argues that appellee gifted her an undivided half of the interest in the Denison Avenue home by executing a survivorship deed. Because the proceeds of the sale of the Denison Avenue home were used to pay off the mortgage on the Parkman Road home, appellant claims a one-half interest in the Parkman Road home. Appellant also argues that appellee was not entitled to $32,500 premarital interest in the Parkman Road home because the evidence did not support a finding that appellee provided that amount. We disagree, and we will address each of these arguments separately.
 {¶ 61} The trial court did not err by failing to award appellant $5,000 premarital interest in the Parkman Road home. Indeed, the Parkman Road home was acquired by the parties during their marriage and is presumed to be marital property. See R.C. 3105.171(A)(3)(a)(i). Any party claiming that the home or part thereof constitutes separate property or that they are entitled to any premarital interest must demonstrate, by a preponderance of the evidence, that this asset can be traced to separate property. Smith at 13. Appellant's argument that she was entitled to $5,000 premarital interest presumes not only that appellant brought $5,000 into the marriage but also that this amount is traceable to the real estate on Denison Avenue.
 {¶ 62} After our careful review of the record, it is very doubtful that appellant brought any funds into the marriage. As discussed above, appellant's pre-marital retirement plan was valued at $5,540 and was liquidated in January 1998. Appellant testified that the amount was put into a mutual checking account and used to pay off the mortgage on the Denison Avenue home, but appellant later testified that the amount was put into a savings account.[4] Appellant also testified that after she married appellee, she sold her mobile home for $11,000 (netting an income of about $6,000 after paying off the mortgage); paid $7,000 to pay off her car loan; financed "a few thousand dollars" toward the appellee's daughter's wedding; cashed in the above-mentioned retirement funds; and "blew a couple thousand" for her own wedding.
 {¶ 63} Based on this testimony and the mathematics involved, it is not conceivable that any of the $6,000 income she generated from the sale of her mobile home or the $5,000 income she generated after cashing in her retirement funds remained, after paying $7,000 for her car loan, spendingat least $2,000 ("a few thousand") towards appellee's daughter's wedding, and spending at least 2,000 ("a couple thousand") on her own wedding. The mathematics derived from appellant's own testimony indicate that, at best, appellant broke even and brought no funds into the marriage.
 {¶ 64} Further, even if appellant had brought funds into the marriage, the funds are not traceable to the Denison Avenue home. According to R.C. 3105.171(A)(6)(b), separate property does not lose its identity as separate property when it is commingled with marital property, unless the separate property is no longer traceable. Therefore, traceability becomes the focus when determining whether separate property remains separate property after it is commingled with marital property. R.C. 3105.171(A)(6)(b); Tedrow v. Tedrow, 11th Dist. No. 2002-T-0064, 2003-Ohio-3693, at ¶ 9.
 {¶ 65} "Various courts have held that in order to properly trace separate property under R.C. 3105.171(A)(6)(b), some type of supporting documentation is required in addition to the bald assertions of one of the parties." Id. at ¶ 18. In the instant case, other than her own testimony, appellant has failed to provide any type of evidence demonstrating that the $5,000 she obtained after cashing in her retirement funds was used toward the mortgage on the Denison Avenue home. Therefore, the trial court's failure to determine that appellant was entitled to $5,000 premarital interest in the Parkman Road home was supported by competent, credible evidence and was not erroneous.
 {¶ 66} Appellant also argues that the trial court erred by awarding appellee $32,500 premarital interest in the home on Parkman Road. Specifically, she contends that appellee was not entitled to any premarital equity in the Parkman Road house because the house was purchased with funds from the sale of the prior residence on Denison Avenue of which appellant alleges an undivided half was transferred and gifted to her through a survivorship deed. After our careful review of the record and relevant case law, we conclude the trial court did not err by determining that appellee did not gift appellant an undivided half of his Denison Avenue home. The record supports the trial court's conclusion that the Denison Avenue home was appellee's separate property.[5]
 {¶ 67} R.C. 3105.171(H) provides: "* * * the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital or separate property." See, also, Lewis v. Lewis, 11th Dist. No. 2002-P-0111, 2003-Ohio-5006, at ¶ 31. "`Under prior case law, the presence of both parties' names on a joint title may have given rise to the presumption that [a party] had foregone whatever separate interest [he] had in the property by gifting fifty percent of it to [the other party] as marital property. Since the enactment of R.C. 3105.171, however, the presumption of a gift has been negated. * * * Rather, a trial court may make such a finding only upon the appropriate factual context.'" (Emphasis added.) Id. at ¶ 33, quoting Frederick v.Frederick (Mar. 31, 2000), 11th Dist. No. 98-P-0071, 2000 Ohio App. LEXIS 1458. Therefore, the form of ownership is not a determinative factor in distinguishing marital property from separate property, and a trial court must consider the totality of the circumstances.
 {¶ 68} "[S]pouses can change separate property to marital property
based on actions during the marriage." Moore v. Moore (1992),83 Ohio App.3d 75, 77. The primary means of effecting this change is via an inter vivos gift of the property from the donor spouse to the donee spouse. "An inter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another." Smithv. Shafer (1993), 89 Ohio App.3d 181, 183.
 {¶ 69} The essential elements of an inter vivos gift are: "(1) [the] intent of the donor to make an immediate gift; (2) delivery of the property to the donee; [and] (3) acceptance of the gift by the donee."Barkley v. Barkley (1997), 119 Ohio App.3d 155, at fn. 2, citing Bollesv. Toledo Trust Co. (1936), 132 Ohio St. 21, paragraph one of the syllabus. The donee has the burden of showing, by clear and convincing evidence, that the donor made an inter vivos gift. Lewis at ¶ 29.
 {¶ 70} We now review whether appellant established, by clear and convincing evidence, that appellee gifted her an undivided one-half interest in his Denison Avenue home. The parties executed the survivorship deed at attorney Vennitti's office, and they wrote new wills that same day. Appellant argues that, because the parties executed the deed on the same day they executed new wills, the evidence demonstrates that the parties executed the survivorship deed as part of a broader estate plan. This does not necessarily follow, and appellant's contention meets neither the required burden of proof nor the essential elements of an inter vivos gift.
 {¶ 71} When asked at the hearing why appellee executed this survivorship deed, appellee testified, "I just assumed as my wife it was the right thing to do." Appellant's counsel did not press appellee further on this issue during cross-examination and moved on to cross-examine appellee on other issues. It is apparent that neither party was quite sure as to why appellant's name was being put on the deed. Appellee's statement hardly illuminates any intent to gift an undivided one-half interest in the Dension Avenue property to appellant, and the record falls short of establishing, by clear and convincing evidence, that appellee intended such a gift.
 {¶ 72} On the other hand, had appellee stated that he executed the deed in order to avoid the costs and delay of probate if one spouse were to pass away, or had appellee stated that he executed the deed because the couple needed to use the land as collateral to buy their Parkman Road home, appellant may have established donative intent on behalf of appellee. See, e.g., Helton v. Helton (1996), 114 Ohio App.3d 683, at 687-688, (finding donative intent because the donor executed a survivorship deed to avoid taxes or probate if one of the parties were to pass away). See, also, Schell v. Schell (June 16, 1992), 2d Dist. No. 2876, 1992 Ohio App. LEXIS 3211, at 7, (finding donative intent when one party executed a survivorship deed to obtain a loan with the real estate as collateral).
 {¶ 73} Even though the parties executed the survivorship deed on the same day they wrote new wills, based on the totality of the circumstances, appellant has failed to establish by clear and convincing evidence that appellee gifted her an undivided one-half interest in the Denison Avenue property. Consequently, the trial court did not err by failing to construe the parties' execution of a joint survivorship deed as a gift from appellee to appellant of an undivided one-half interest in the property to appellant.
 {¶ 74} Appellant next argues that appellee was not entitled to $32,500 premarital interest in the Parkman Road property because the evidence did not establish that appellee actually put forth that amount. We concluded earlier that appellant was not entitled to $5,000 premarital interest in the Denison Avenue home, and the Denison Avenue real estate constituted appellee's premarital property.[6] Appellee would be entitled to premarital interest in the Parkman Road property if he established, by a preponderance of the evidence, that the Parkman Road property or a portion thereof was traceable to his separate property in the Denison Avenue home.
 {¶ 75} The parties agree that the Denison Avenue real estate sold at approximately $45,000. They also agree that a down payment of $15,000 was applied toward the Parkman Road home, and the remaining $17,500 of the purchase price was paid from the proceeds of the sale of the Denison Avenue home.
 {¶ 76} Because the Denison Avenue real estate constituted appellee's separate property, it is clear that the $17,500 payment towards the Parkman Road home constituted appellee's premarital interest. Via the receipt for appellee's cashier's check to Principi Realty, the record also demonstrates, and appellant does not contest, that $6,500 of the $15,000 down payment on the Parkman Road home constituted appellee's separate property.
 {¶ 77} The remaining portion of the down payment, $8,500, is therefore in question. The record reveals a receipt for a cashier's check in the amount of $8,000 from both appellant and appellee to Principi Realty. This check was drawn on a joint account, and this is presumed as marital property. Appellee put forth no evidence tracing these funds to separate property. As a result, the trial court's finding that the $15,000 down payment on the Parkman Road home constituted appellee's separate property was error and against the manifest weight of the evidence.
 {¶ 78} This error was harmless. Appellee also put forth evidence, which appellant did not contest, that his premarital funds financed $5,000 towards a barn and $4,000 for repairs to the Parkman Road home including a new roof, furnace, and water heater. Thus, the record demonstrates that appellee applied approximately $34,000 of his pre-marital funds toward the Parkman Road home. The trial court did not abuse its discretion by awarding appellee $32,500 premarital interest in the marital home.
 {¶ 79} To summarize, the trial court did not err by awarding appellant only 8.57 percent of appellee's 401(k) or by failing to award appellant half of appellant's Alltel stock. However, the trial court did err by failing to award appellant half of appellee's Bank One checking account. Accordingly, appellant's first assignment of error is with merit to the extent indicated.
 {¶ 80} In appellant's second assignment of error, she argues that the trial court erred by failing to award her spousal support. "It is well-established that pursuant to R.C. 3105.18(C)(1), the trial court enjoys broad discretion in awarding [or failing to award] spousal support to either party * * *." McMahon v. McMahon, 11th Dist. No. 2001-P-0042, 2002-Ohio-3378, at ¶ 8, quoting Young v. Young, 11th Dist. No. 2001-T-0026, 2002-Ohio-1329, at ¶ 25. See, also, Kunkle v. Kunkle
(1990), 51 Ohio St.3d 64, 67. As stated earlier, an abuse of discretion connotes more than a mere error of law or judgment, and it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore at 219. After our review of the record, it is clear that the trial court did not abuse its discretion by failing to award appellant spousal support.
 {¶ 81} R.C. 3105.18(C) outlines the factors a trial court must consider in making a determination of spousal support, and a trial court's determination shall not be based on any factor taken in isolation. Pursuant to R.C. 3105.18(C), the trial court must consider: (1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties' retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of the spousal support award; (13) the lost income that results from the parties' marital responsibilities; and (14) any other factor the court deems relevant.
 {¶ 82} Appellant argues that an award was proper because she had "little chance of becoming fully self-supporting." She states that while she has $125 per month after expenses, appellee will have about $2000 per month after expenses. Despite these contentions, a trial court may but is not required to consider the necessity of spousal support, as R.C. 3105.18
does not require it to do so. Consideration of necessity is discretionary and to be considered when the court deems it relevant. See, e.g.,DeChristefero at ¶ 15, (holding that "[t]he court does not have to consider whether the spouse receiving the award actually needs it, but should determine whether the award is fair and equitable and in accordance with the law"). The relevant inquiry in awarding spousal support is whether the award is "appropriate and reasonable," rather than whether the award is "necessary." Pengov v. Pengov (Dec. 12, 2003), 11th Dist. No. 2002-G-2485, 2003 Ohio App. LEXIS 5978, at ¶ 24, citing Wellerv. Weller, 11th Dist. No. 2001-G-2370, 2002-Ohio-7125, at ¶ 43.
 {¶ 83} The trial court found that appellant was fully capable of working full-time, despite her unsubstantiated claims to the contrary. It was clear that this was primarily a credibility issue. The trial court noted appellant will likely receive a widow's pension, an apt observation as there was a fifteen-year age difference between the parties. Appellant will receive significant liquid assets as part of the property division connected with these proceedings. Appellant was also awarded an 8.57 percent prorated share of appellee's pension. The trial court's findings are fully supported by the record, and in light of the court's analysis, the court's failure to award appellant spousal support did not amount to abuse of discretion.
 {¶ 84} Also, contrary to appellant's assertion, appellant was not specifically entitled to maintain after the termination of the marriage the same standard of living which she enjoyed during her marriage. Spousal support is required only to be fair and equitable. Kaechele at 94. Each party "should enjoy after the termination of a marriage a standard of living reasonable and appropriate as adjusted by the variousfactors of R.C. 3105.18(B)." (Emphasis added.) See, also, Buckles v.Buckles (1988), 46 Ohio App.3d 102, 110.
 {¶ 85} Each party should be placed in parity, but not necessarily equality. Id. "`Parity' is necessarily an equitable term meaning essentially `equitably' equal rather than `mathematically equal.' Parity may be accomplished by an award of sustenance alimony or of property-division alimony, lump-sum alimony, or a combination of these. * * *
 {¶ 86} "The standard of living established during the marriage is the highest, but not the lowest standard to be utilized in determining the need for sustenance alimony. However, equality of the standard of living between the parties is not necessarily required." Id. at 110-111.
 {¶ 87} According to the trial court, appellant will receive significant liquid assets as part of the property division which, in combination with her ability to obtain full-time work, will enable appellant to maintain a reasonable standard of living in light of the standard of living she enjoyed during her marriage with appellee. The trial court's failure to award spousal support to appellant, in light of its detailed analysis and consideration of the appropriate factors, did not amount to an abuse of discretion. Accordingly, appellant's second assignment of error is not well-taken.
 {¶ 88} In conclusion, appellant's first assignment of error is with merit to the extent indicated, and appellant's second assignment of error is not well-taken. The judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court to enter judgment consistent with this opinion.
Grendell, J., Rice, J., concur.
[1] The trial court's judgment entry continually refers to appellant as fifty-seven years old. At the hearing, she testified that she was to turn fifty-seven in a few weeks, thus making her fifty-six at the time of the hearing.
[2] The trial court's judgment entry spells Denison D-e-n-n-i-s-o-n. However, the deed itself spells the avenue D-e-n-i-s-o-n.
[3] Appellant stated she was fifty-six years old, to become fifty-seven a few weeks after the hearing date.
[4] The parties dispute whether the mortgage on the Denison home was paid in full at the time of their marriage. No evidence was admitted clarifying this discrepancy.
[5] Appellant put forth no evidence or argument that the appreciation value of the Denison Avenue home from the time of the parties' marriage to the time of the sale of the home constituted marital property.
[6] Appellant put forth no evidence or argument that the appreciation value of the Denison Avenue home from the time of the parties' marriage to the time of the sale of the home constituted marital property.