OPINION
{¶ 1} Defendant-appellant, Peter DiNunzio, Sr., appeals the Judgment Entry of Divorce of the Lake County Court of Common Pleas, Domestic Relations Division, terminating his marriage to plaintiff-appellee, Ellen DiNunzio, and dividing the marital estate. For the following reasons, we affirm the decision of the court below.
 {¶ 2} Peter and Ellen DiNunzio were married in Cleveland, Ohio, in September 1962, the year that Peter arrived in America from Italy. Four children were born as issue of the marriage, all emancipated adults: Peter, Jr., David, Diana, and Joan. Ellen quit working outside the home in 1962 when she became pregnant. Since that time, she has been a homemaker and has raised the children. After the birth of Joan in 1968, Ellen began to suffer from paranoid schizophrenia. Ellen's condition has required her hospitalization on several occasions during the course of the marriage.
 {¶ 3} Until 1982, Peter worked as a carpenter, for which he currently receives a pension. In 1982, Peter formed D N Builders, Inc. As incorporated, Peter owned 93 percent of D N Builders and Peter, Jr. owned 7 percent. Peter and Peter, Jr. have been the only owners and permanent employees of D N Builders. Initially, D N Builders primarily did commercial renovation. Peter managed the company and Peter, Jr. handled the finances and bookkeeping, on account of Peter's limited ability in English. Peter, Jr. was a teenager when D N Builders was formed. Peter, Jr. has worked for D N Builders his entire adult life. Since 1982, D N Builders has been the sole means of financial support for the DiNunzio family and has provided for the education of the other DiNunzio children. Besides Peter and Peter, Jr., none of the other members of the DiNunzio family took an active part in the business. D N Builders was run informally as a "family" business. Peter, Jr. received a salary that varied from year to year.
 {¶ 4} D N Builders came to be involved in home construction. In 1994, Primavera Development Limited Partnership was formed for the purpose of developing a housing subdivision. Peter owned a 37½ percent interest in Primavera Development; D 
N Builders owned another 37½ percent; and Elio Iafelice, a family friend of the DiNunzios, owned 25 percent. Primavera Development acquired a tract of land in Mentor, Ohio, which it proceeded to subdivide and improve. Although some lots in the development were sold bare, it has been the preferred practice to sell the lots with houses built by D N Builders. For this purpose, D N Builders constructed a model home at 9290 Angelina Circle. In 1998, Peter, Ellen, and Peter, Jr. moved into the house at 9290 Angelina Circle which also houses the business office of D N Builders. At the time the present action was initiated, eight lots in the Primavera development remained unsold.
 {¶ 5} In 1993, Diana and her husband, Charles Murray, moved into a house at 5106 Forest Road, Mentor, built by J P Partners, a partnership formed by Peter, Jr. and John Ciancibello. This house remained titled in Peter, Jr.'s name and Diana made payments to Peter, Jr. for the house.
 {¶ 6} Since 1995, David has lived at a house at 9314 Lake Shore Boulevard, Mentor, titled in Peter's name. David did not pay any part of the purchase price for the home and did not pay rent, although he has spent time and money renovating the house.
 {¶ 7} In 1998, Joan and her husband purchased a D N house at 5431 St. Peters Way in the Primavera development and next to the residence at 9290 Angelina Circle where Peter, Ellen, and Peter, Jr. resided.
 {¶ 8} In 2000, Peter was diagnosed with severe coronary artery disease resulting in by-pass surgery and the receipt of social security disability benefits. Also in 2000, Peter purchased a condominium in Delray Beach, Florida. Peter continued to work at D N Builders as a consultant.
 {¶ 9} In December 2001, Diana filed for divorce from Charles and had him removed from the residence at 5106 Forest Road. Charles was allowed to stay at the Angelina Circle residence by Peter and Peter, Jr. These events precipitated a crisis in the DiNunzio family, dividing the family along gender lines.[1]
In the same month, Ellen ceased taking her medicine and was admitted to Laurelwood psychiatric hospital. At this time, she determined to divorce Peter. Ellen remained hospitalized until January 2002.
 {¶ 10} In January 2002, Peter, Jr. initiated legal proceedings to have Diana expelled from the residence at 5106 Forest Road. It was ultimately determined that Diana would be allowed to purchase the Forest Road property from Peter, Jr. SeeDiNunzio v. Murray, 11th Dist. No. 2003-L-213, 2005-Ohio-4047.
 {¶ 11} In February 2002, on the recommendation of Ellen's doctor, Peter, Jr. initiated proceedings to have Ellen declared incompetent and to have himself appointed guardian for Ellen. This action was opposed by Joan, who filed a counter-application seeking to have herself appointed Ellen's guardian should Ellen be found incompetent.
 {¶ 12} In June 2002, Peter quitclaimed to David the property at 9314 Lake Shore Boulevard and quitclaimed to Peter, Jr. properties at 9093 Lake Shore Boulevard and 9256 Lake Shore Boulevard.
 {¶ 13} In July 2002, the probate court determined Ellen to be competent and denied the applications for guardianship.
 {¶ 14} In October 2002, Peter transferred his 93 percent interest in D N Builders, represented by 697 shares of stock, to Peter, Jr. No consideration was paid for any of the transfers of property or stock.
 {¶ 15} On November 22, 2002, Ellen filed a Complaint for Divorce, Spousal Support, Division of Property, Attorney Fees, Distributive Award and Other Relief and a Motion for Ex Parte Restraining Orders on the Parties, thereby formally commencing the present litigation. In addition to Peter, Peter, Jr., David, Iafelice, D N Builders, and Primavera Development were also named as defendants. Restraining orders were issued to all parties prohibiting the alienation of the parties' property "provided that this restraining order shall not prevent the normal operation of any business." In the course of the proceedings, numerous motions to show cause have been filed by both parties. Further effort was made to have Ellen declared incompetent.
 {¶ 16} In July 2003, Peter, Jr. encumbered the Angelina Circle residence by executing a mortgage deed and promissory note in favor of First Merit Bank NA on behalf of D N Builders. Peter, Jr. used $150,000 of this money to purchase property located at 9338 Lake Shore Boulevard, titled in his name, for future development. The other $77,000 was used for other business expenses.
 {¶ 17} In September 2003, as a result of Peter, Jr.'s encumbering the Angelina Road property, Ellen moved the court to join First Merit Bank and Third Federal Savings and Loan Association of Cleveland as new party defendants. Although the motion to join was granted, these parties were ultimately dismissed from the action.
 {¶ 18} The matter proceeded to trial before a magistrate on September 16, September 17, September 21, and October 8, 2004. At the time of trial, Ellen was 70 years old and Peter was 66 years old. The magistrate's decision was issued on October 18, 2004. The magistrate valued the total marital estate at $1,417,239.00 ($708,619.50 per person), and provided for the division of the marital estate as follows:
{¶ 19} Ellen DiNunzio to receive:
 {¶ 20} 9290 Angelina Circle[2] $297,600.00
 {¶ 21} Certificate of Deposit $1,500.00
 {¶ 22} City of Mentor Check $300.00
 {¶ 23} Primavera lot # G-020[3] $63,750.00
 {¶ 24} Primavera lot # G-021 $52,500.00
 {¶ 25} Primavera lot # G-023 $48.750.00
 {¶ 26} 9256 Lake Shore Blvd. $160,000.00
 {¶ 27} Primavera lot # G-001 $60,000.00
 {¶ 28} Total to Ellen DiNunzio $684,400.00
 {¶ 29} Peter DiNunzio, Sr. to receive:
 {¶ 30} Florida condominium $68,000.00
 {¶ 31} Honda Odyssey $13,500.00
 {¶ 32} Primavera lot # H-019 $63,750.00
 {¶ 33} Primavera lot # H-020 $60,000.00
 {¶ 34} Primavera lot # H-023 $60,000.00
 {¶ 35} Primavera lot # H-002 $60,000.00
 {¶ 36} David's home (9314 Lake Shore) $150,000.00
 {¶ 37} Peter, Jr.'s home (9093 Lake Shore) $250,000.00
 {¶ 38} Marital interest in D N equipment $7,589.00
 {¶ 39} Total to Peter DiNunzio $732,839.00
 {¶ 40} To effect an equal distribution of the marital assets, the magistrate ordered Peter to pay Ellen the sum of $24,219.50 ($732,839.00 minus $24,219.50 equals $708.619.50; $684,400.00 plus $24,219.50 equals $708.619.50).
 {¶ 41} Additionally, the magistrate awarded Ellen the balance of the value of the Angelina Circle home "for the unconscionable manner in which the defendant, Peter DiNunzio, Sr. transferred all of the marital property to his son to divest his wife of any interest in same while at the same time an Application for Guardianship of her person and of her estate was pending in Lake County Probate Court."
 {¶ 42} The magistrate awarded spousal support so as to equalize Ellen and Peter's monthly income. Ellen "should receive her Social Security check, one-half (½) the husband's pension through QDRO, and one half (½) of the difference between her monthly Social Security payment and husband's Social Security Disability payment."
 {¶ 43} All motions to show cause were denied.
 {¶ 44} Peter was ordered to reimburse Ellen $10,000.00 of her legal fees "because of the bad faith actions taken in transferring the property and divesting Ms. DiNunzio of her marital interest in and to same." Further, Peter was ordered to pay the court costs and D N Builders was ordered to bear the cost of the experts/appraisers' testimony.
 {¶ 45} Peter, Jr. was ordered to satisfy the mortgage with First Merit.
 {¶ 46} Defendants duly filed objections to the magistrate's decision which the trial court overruled on June 3, 2005. The trial court adopted the magistrate's decision and, on July 19, 2005, issued its Judgment Entry of Divorce. This appeal timely follows.
 {¶ 47} Defendants raise the following assignments of error.
 {¶ 48} "[1.] The trial court erred to the prejudice of the Appellant Husband by awarding and calculating spousal support to Appellee.
 {¶ 49} "[2.] The trial court erred to the prejudice of the Appellants by determining that certain assets were marital property to be equally divided.
 {¶ 50} "[3.] The trial court erred to the prejudice of the Appellant by awarding attorney fees against Appellant Husband for `bad faith.'
 {¶ 51} "[4.] The trial court erred to the prejudice of the Appellant D N to pay all expert and appraisal costs.
 {¶ 52} "[5.] The trial court erred to the prejudice of the Appellant Husband that all household goods and furnishings be awarded to Appellee without valuation.
 {¶ 53} "[6.] The trial court erred to the prejudice of the Appellants by incorporating vague and non-final orders in the judgment entry."
 {¶ 54} The first assignment of error challenges the award of spousal support. In a divorce proceeding, a court may award "reasonable spousal support" upon the request of either party and when such award is "appropriate and reasonable." R.C. 3105.18(B) and (C). "The relevant inquiry in awarding spousal support is whether the award is `appropriate and reasonable,' rather than whether the award is `necessary.'" O'Grady v. O'Grady, 11th Dist. No. 2003-T-0001, 2004-Ohio-3504, at ¶ 82 (citation omitted). "In making spousal support awards, R.C. 3105.18
requires the trial court to review the statutory factors * * * that support such an order, and then indicate the basis for awarding spousal support in sufficient detail to facilitate adequate appellate review." Stafinsky v. Stafinsky (1996),116 Ohio App.3d 781, 784, citing Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 96-97. A trial court's judgment regarding spousal support should not be reversed absent an abuse of discretion by the trial court. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67;Holcomb v. Holcomb (1989), 44 Ohio St.3d 128, 131.
 {¶ 55} In affirming the magistrate's award of spousal support, the trial court noted that it was "most significant" that "the marriage herein has had a duration of forty-two years. Wife is age 70 and has suffered from paranoid schizophrenia off and on for more than thirty years. Husband is 66 years old and receives Social Security Disability due to severe coronary artery disease. He had by-pass surgery in 2000. Wife receives $620.00 per month based on Husband's Social Security. She has been a homemaker her entire life. Husband has been a carpenter; thereafter, he ran his own land and construction business from 1982 through the Fall of 2002. Factors (f), (h), (j), (k), (m) of the statute [R.C. 3105.18(C)] are not relevant to a consideration of spousal support herein. The duration of the marriage, Wife's mental health, and her not being employed outside the home are significant factors which justify the award by the Magistrate."
 {¶ 56} Appellants raise a number of arguments as to why the trial court abused its discretion in awarding Ellen spousal support. Appellants argue that Ellen does not have a physical disability, such as Peter has, that would prevent her from seeking employment. Appellants argue that the purpose of spousal support is "to provide for the financial needs of the ex-spouse," rather than equalize the income of the ex-spouses. Appellants also argue that it was improper for the lower court to consider Peter's Social Security disability in determining the amount of spousal support to award.
 {¶ 57} We reject appellants' argument that Ellen is capable of seeking "modest employment" since her disability is mental rather than physical for the reason that mental illness may be just as debilitating as physical disability. Appellant's argument also fails to recognize the more salient consideration that Ellen is 70 years old and has not worked outside of the home since 1962. Both Ellen and Peter are past the age of retirement. The value of the marital estate and the parties' retirement incomes are such that neither party must seek further employment.
 {¶ 58} Appellants are incorrect that the purpose of spousal support is to provide for the financial needs of the ex-spouse.O'Grady, 2004-Ohio-3504, at ¶ 82. In light of the duration of the marriage and the parties' joint effort in contributing to the marital estate as breadwinner and homemaker, it is appropriate and reasonable that the parties' income in retirement be equalized.
 {¶ 59} Finally, appellants are incorrect that disability benefits may not be considered when calculating an award of spousal support. The trial court is required by statute to consider the parties' income "from all sources." R.C.3105.18(C)(1)(a). "All sources" includes a party's disability income. Crites v. Crites, 6th Dist. Nos. WD-04-034 and WD-04-042, 2004-Ohio-6162, at ¶ 22; Cardone v. Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, at *10-*14.
 {¶ 60} The first assignment of error is without merit.
 {¶ 61} In their second assignment of error, appellants argue that the trial court erred by determining the following to be marital assets: the property at 9314 Lake Shore Boulevard, the property at 9093 Lake Shore Boulevard, and the property at 9290 Angelina Circle.
 {¶ 62} "Marital property" is defined as "[a]ll real and personal property that currently is owned by either or both of the spouses, * * * and that was acquired by either or both of the spouses during the marriage" and "[a]ll interest that either or both of the spouses currently has" in such property. R.C.3105.171(A)(3)(a)(i) and (ii). "[T]itle does not determine whether property is marital and a trial court is not bound by the form of title in distributing property." Longo v. Longo, 11th Dist. No. 2004-G-2556, 2005-Ohio-2069, at ¶ 51, citing Pardee v.Pardee (Sept. 30, 1992), 11th Dist. No. 91-P-2398, 1992 Ohio App. LEXIS 5036, at *4. Moreover, under R.C. 3105.171, a court may issue "any orders * * * that it determines equitable." R.C.3105.171(J).
 {¶ 63} A trial court's characterization of property as either marital or separate that involves factual questions is reviewed under a manifest weight of the evidence standard. Boyles v.Boyles, 11th Dist. No. 2002-P-0097, 2003-Ohio-5351, at ¶ 18 (citation omitted). A trial court's factual findings are entitled to a presumption of correctness and will not be reversed as being against the manifest weight of the evidence if they are supported by competent, credible evidence. Seasons Coal Co. v. Cleveland
(1984), 10 Ohio St.3d 77, 79, citing C.E. Morris Co. v. FoleyConstruction Co. (1978), 54 Ohio St.2d 279, at syllabus.
 {¶ 64} The properties at 9314 Lake Shore Boulevard and 9093 Lake Shore Boulevard both contain residences. In June 2002, these properties were transferred, without consideration, by quitclaim deed from Peter to David and Peter, Jr. respectively. At this time, Peter, Jr.'s application to have Ellen declared incompetent was pending in probate court and Ellen had not yet filed for divorce. There is evidence in the record that Ellen intended David and Peter, Jr. to eventually own these homes. There is also evidence in the record that the transfer of these properties in June 2002 was done without Ellen's knowledge or consent. Appellants maintain that the transfers were made in the course of financial planning and not in anticipation of divorce. Appellants also maintain that consideration was given for the transfers in the work that Peter, Jr. and David did to improve the properties. The magistrate and trial court, however, concluded that these transfers were made to defraud Ellen of her marital property. Appellants argue that since these properties were properly titled in Peter, Jr. and David's name when Ellen filed for divorce in November 2002, the trial court erred by including them in the marital estate.
 {¶ 65} We find the trial court's decision to be supported by competent and credible evidence. Although there had been discussions between Ellen and Peter about giving these properties to their sons, these discussions were had "years before" the actual transfers of which Ellen did not have knowledge. When asked why the properties had not been transferred earlier, Peter replied "there was no need at that particular time, because this happened just now, because of this divorce." Given the totality of the circumstances, the deteriorating family relationships, the pending guardianship application, and the complete divestiture of all marital assets within a few months of the filing of the divorce, the trial court properly determined these assets to be marital property.
 {¶ 66} We reject appellants' argument that these properties were properly gifted to Peter, Jr. and David. As the magistrate observed, "one spouse cannot unilaterally divest the other spouse of his or her interest in property." In such cases, courts have held the transfers to be void and of no legal effect. See Estateof Dunlap v. Dunlap (March 27, 1996), 1st Dist. Nos. C-940033 and C-940050, 1996 Ohio App. LEXIS 1107, at *16 (husband could only transfer legal title in stock to the extent of his lawful interest in the stock; the attempted conveyance of shares which were marital property constituted a "legal nullity"); Leathem v.Leathem (1994), 94 Ohio App.3d 470, 473 (conveyance of the parties' residence into a trust by the husband alone was void abinitio, when the residence, although titled to the husband, was marital property before its conveyance).
 {¶ 67} The same analysis applies to appellants' contention that the trial court improperly divided the property at 9290 Angelina Circle and D N Builders' interest in the Primavera lots.[4] Appellants argue that these properties cannot be found to be marital property because they have never been titled in Ellen or Peter's names. As noted above, however, title is not determinative of an assets status as marital property. Cf.Fenstermaker v. Fenstermaker, 11th Dist. No. 2004-T-0097,2005-Ohio-5604, at ¶ 24 (condominium purchased by husband and titled in his business' name was found to be a marital asset). In the present case, the trial court properly found that whether the assets were titled to Ellen, Peter, or D N Builders is "immaterial" and that Peter, Peter, Jr., and D N Builders "used their names interchangeably on personal and business financial transactions over the years." The magistrate found that "D N Builders, the lots and all of the properties owned by the DiNunzios under whatever name and whatever percentage were all in the nature of support. It provided the homes for the parties, the food on their table, the payment of their bills, sent their children to college or provided monies for their weddings, it provided them with homes, furniture and the like."
 {¶ 68} The second assignment of error is without merit.
 {¶ 69} Under the third assignment of error, appellants argue that the trial court erred by awarding Ellen attorney fees from Peter in the amount of $10,000 for "bad faith."
 {¶ 70} "[I]n Ohio * * * an award of attorney fees must be predicated on statutory authorization or upon a finding of conduct which amounts to bad faith." Vance v. Roedersheimer,64 Ohio St.3d 552, 556, 1992-Ohio-89. "[T]he decision to award attorney's fees and the amount of the award are within the discretion of the trial court." Rendina v. Rendina, 11th Dist. No. 2003-L-193, 2005-Ohio-4772, at ¶ 70, citing Snyder v.Snyder, 11th Dist. No. 2000-G-2307, 2001-Ohio-4316, 2001 Ohio App. LEXIS 4295, at *8-*9. "[A]s long as the appellate court is able to determine the rationale underlying the award of fees, and the record supports the same, no abuse of discretion will be found." Id (citation omitted).
 {¶ 71} In the present case, the magistrate recommended the award of $10,000 in attorney fees to Ellen for Peter's "bad faith action in attempting to divest her of all of her marital interest in the marital estate." The magistrate's assessment of Peter's conduct is supported by the record. If the transfers of stock and property had been recognized by the court, the only significant assets remaining in the marital estate would have been the Florida condominium, valued at $68,000, and Peter's carpenter's pension, valued at $60,893.17, a decrease in value of over one million dollars. Much of the four days of trial in the present matter was spent discussing the status of the stock and property and the circumstances of their transfer.
 {¶ 72} Appellants claim that the record lacks any evidence of the reasonableness and necessity of the fees. We disagree. Ellen's attorney took the stand during trial and testified that the total bill for attorney fees was $27,932.23, billed at a rate of $220 per hour and including $205 for filing fees and $53.38 for the cost of a process server. The award of $10,000 represents just over a third of Ellen's total attorney fees. Accordingly, we find the trial court's decision to award attorney fees and the amount awarded to be reasonable and just.
 {¶ 73} The third assignment of error is without merit.
 {¶ 74} In their fourth assignment of error, appellants argue that the trial court erred by ordering D N Builders to pay the costs of appraisal. Appellants argue this constitutes an abuse of discretion as Ellen was the party that sought the appraisal and as the magistrate did not accept the appraisers' evaluations.
 {¶ 75} The trial court may award the prevailing party in a civil action court costs, including witness fees. Civ.R. 54(D). The decision to impose costs is reviewed under an abuse of discretion standard. Langaa v. Pauer, 11th Dist. No. 2004-G-2600, 2005-Ohio-6295, at ¶ 53 (citation omitted).
 {¶ 76} Prior to trial in the present case, the magistrate ordered D N Builders to pay for appraisal costs. Appellants moved the court to order Ellen to pay half of these costs. In the magistrate's final decision, she allowed the order that D N Builders pay the costs to stand, reasoning that, since part of D N Builders was marital property, Ellen had, in effect, contributed to the cost of the appraisals. Appellants claim that only 93 percent of D N Builders was marital property and, therefore, the magistrate's decision prejudices Peter, Jr.'s 7 percent interest in D N Builders. We disagree.
 {¶ 77} As the prevailing party, Ellen is entitled to court costs against the defendants-appellants, who include Peter, Jr. and D N Builders.[5] See Berry v. Van Gulijk (Sept. 29, 1994), 3rd Dist. Nos. 8-93-31 and 8-94-2, 1994 Ohio App. LEXIS 4458, at *8-*9. We find no abuse of discretion.
 {¶ 78} The fourth assignment of error is without merit.
 {¶ 79} In the fifth assignment of error, appellants argue that the trial court erred by awarding Ellen the household goods and furnishings of the property at 9290 Angelina Circle without valuation. In regards to this property, the trial court's final judgment held that Peter, Jr. and David shall have the right to remove whatever personal property of theirs remains at 9290 Angelina Circle. However, "since there was no appraisal for household goods and furnishings * * *, all of the remaining household goods and furnishings at the marital home, save the personal items of David and Peter DiNunzio, Jr., are Mrs. DiNunzio's property."
 {¶ 80} This court has consistently held that "it is error for the trial court to fail to make a finding as to the fair market value of each item of marital property so that an appellate court can effectively review the propriety of the court's decision."Eisler v. Eisler (1985), 24 Ohio App.3d 151, syllabus, citingCherry v. Cherry (1981), 66 Ohio St.2d 348. Such error is not per se reversible. "The appropriate consideration is whether the trial court's disposition of these items resulted in a property division, which, viewed in its entirety, was an abuse of discretion." Briganti v. Briganti (1984), 9 Ohio St.3d 220,222.
 {¶ 81} In the present case, Peter moved out of the residence on Angelina Circle in 2004 and, at the time of trial, resided with Peter, Jr. When asked what personal possessions he had left at Angelina Circle, Peter responded "clothes, whatever." Peter, Jr. and David claimed many personal items in the Angelina Circle house which the court allowed to be removed, including a television, DVD player, the lawnmower, a living room set, a couch and two end tables, a treadmill, coffee and espresso machines, and various other appliances and furnishings. Although this testimony is not direct evidence of the total value of the household goods and furnishings at the Angelina Circle house, it demonstrates that Peter, Peter, Jr. and David had ample opportunity to assert claims to those goods and furnishings. In light of the total value of the marital estate of almost one and a half million dollars, the court's willingness to allow Peter, Jr. and David to remove a number of household items, and the lack of evidence or appraisal of the goods and furnishing, the trial court's failure to fix the value of the remaining goods and furnishing before awarding them to Ellen is not reversible error. Cf. Dinard v. Dinard (May 29, 1992), 11th Dist. No. 91-T-4544, 1992 Ohio App. LEXIS 2758, at *4 ("[w]hen reviewing the property division in its entirety, the failure to assign values to the household goods * * * did not constitute an abuse of discretion").
 {¶ 82} The fifth assignment of error is without merit.
 {¶ 83} In the sixth and final assignment of error, appellants argue that the trial court erred by incorporating "vague and non-final orders" into the judgment entry. Specifically, appellants maintain that the trial court's judgment gives Ellen authority to sell the four Primavera lots awarded her, paying Iafelice his interest in the proceeds, but "does not indicate when such would take place, who will be responsible for the various planning, reviews, deed restriction compliances to name just a few." The questions raised by appellants do not render the trial court's judgment vague or invalid. The lots at issue are Ellen's, subject to Iafelice's interest therein, and she may dispose of them as her property in any manner consistent with her rights thereto.
 {¶ 84} The sixth assignment is without merit.
 {¶ 85} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, Domestic Relations Division, terminating the marriage of Peter and Ellen DiNunzio and dividing the marital estate, is affirmed.
O'Neill, J., O'Toole, J., concur.
[1] As indicators of the animosity felt among members of the DiNunzio family, Peter, Jr. neither informed nor invited his mother to his wedding in September 2004. Joan refuses to allow Peter, Jr. to see her children, which include his goddaughter, and has endeavored to remove him as godfather to extent that this is allowed by the Catholic Church.
[2] The Angelina Circle house was valued at $320,000.00. The $297.600.00 is 93 percent of this value reflecting Peter's 93 percent interest in D N Builders which held title to the Angelina Circle house.
[3] The Primavera lots were valued exclusive of Iafelice's 25 percent interest in each of them.
[4] The magistrate and trial court only considered the value of the lots themselves, not the profits from the sale of the lots with homes. The magistrate noted that it was unclear from the evidence what those profits were and that Peter, Jr. would be entitled to quantum meruit for the work he did in constructing the homes and arranging their sale were such a division of profits attempted. The magistrate also rejected Ellen's request for a distributive award on the grounds of dissipation of assets. The magistrate noted that, although appellants had tried to divest Ellen of her interest in the assets, the value of the assets themselves was actually enhanced by Peter and Peter, Jr.'s efforts.
[5] Peter was ordered to pay the remaining court costs.