OPINION
{¶ 1} Appellant, Cleta Gossser ("Cleta") timely appeals from an order of the Trumbull County Court of Common Pleas, Division of Domestic Relation following a trial to the court for legal separation from appellee, Gary Gosser ("Gary"). Cleta appeals the trial court's designation of certain property as separate property and challenges the trial court's spousal support determinations. For the reasons that follow, we affirm.
 {¶ 2} Cleta and Gary were married on November 22, 1982. On January 11, 2005, Cleta filed a complaint for legal separation. Gary responded in kind with a *Page 2 
counterclaim for divorce. The counterclaim was dismissed by agreement of the parties, and the case proceeded to trial upon Cleta's request for legal separation.
 {¶ 3} On December 19 and 21, 2005, the parties presented evidence to the trial court after entering into certain stipulations. The trial court rendered its decision on February 1, 2006. It is from this judgment that Cleta now appeals.
 {¶ 4} Cleta's first assignment of error states:
 {¶ 5} "THE TRIAL COURT'S FINDING THAT CERTAIN OHIO SAVINGS BANK CERTIFICATE OF DEPOSIT ACCOUNTS WERE THE SEPARATE PROPERTY OF APPELLEE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 6} Each of Cleta's first three assignments of error involve the trial court's designations of separate and marital property and debt. "When reviewing a trial court's designation of property as marital or separate, an appellate court applies a manifest weight of the evidence standard of review." Seybert v. Seybert, 11th Dist. No. 99-T-0119, 2001-Ohio-8739, *12 . The designation of separate property by the trial court will be upheld on appeal if it is supported by competent, credible evidence. Id.; see, also, Fletcher v. Fletcher (1994),68 Ohio St.3d 464, 468.
 {¶ 7} In her first assignment of error, Cleta challenges the trial court's classification of two certificate of deposit accounts as the separate property of Gary. The parties jointly owned five Ohio Savings Bank certificate of deposit accounts. The trial court found that two of these accounts were the separate property of Gary, derivative of an inheritance he received from his mother's death. Specifically, the trial *Page 3 
court found that $20,000 in account number 21-1011911 and $10,000 in account number 21-1012238 were the separate property of Gary.[1]
 {¶ 8} Account 21-1011911 was opened on November 12, 1997 in the names of both Cleta and Gary. An initial deposit of $20,000 drawn on an account in the name of Gary only was used to open this account. Account 21-1012238 was opened on February 20, 1999 in the names of both Cleta and Gary with an initial deposit of $10,000. Gary testified that the money he received from his mother's inheritance was initially placed into a separate checking account in his name only at First Place Bank, which was later used to fund these certificate of deposit accounts.
 {¶ 9} Gary's brother Roger L. Gosser testified at trial that in 1996 he had a joint power of attorney with Gary for the purpose of dividing their mother's estate during the period of convalescence prior to her death. Roger provided a breakdown of the funds withdrawn from their mother's miscellaneous accounts. Relative to the 1999 deposit, Roger testified that the closing for the sale of the mother's home took place on February 17, 1999. Gary would have received $24,964.50 from the proceeds of this sale.
 {¶ 10} Cleta agreed through her testimony that some of the money Gary received from his mother was deposited into Ohio Savings Bank. She also agreed that the money deposited on November 12, 1997 into account 21-1011911 was drawn from an account solely in Gary's name. She could not verify the source of the funds for the other account. *Page 4 
 {¶ 11} Gary testified that he did not intend on giving Cleta any of the inheritance funds despite the fact that a portion of those funds were deposited into joint accounts.[2] He also stated that no other funds were deposited into the two accounts in question beyond the initial deposits and the earned interest.
 {¶ 12} Cleta asserts on appeal that Gary failed to properly trace the money in these accounts to the money received from his mother's inheritance. Therefore, Cleta claims he failed to prove the funds were his separate property. A party claiming separate property is burdened to prove the independent nature of the property by a preponderance of the evidence. Letson v. Letson (Sept. 30, 1997), 11th Dist. No. 95-T-5356, 1997 Ohio App. LEXIS 4445, *6.
 {¶ 13} R.C. 3105.171 defines separate property as: "all real and personal property and any interest in real or personal property that is found by the court to be any of the following: (i) [a]n inheritance by one spouse by bequest, devise, or descent during the course of the marriage * * *." According to R.C. 3105.171(B), the trial court is required to identify marital property and separate property and divide each equitably. Generally, the separate property will be returned to the spouse from whom it originated. Id. at *5.
 {¶ 14} Traceability becomes an issue in making a separate property determination when commingling of assets has muddied the identity of the separate property. See, Letson, supra, at *6; see, also, Matic v.Matic (July 27, 2001), 11th Dist. No. 2000-G-2266, 2001 Ohio App. LEXIS 3360, *6. R.C. 3105.171(A)(6)(b) provides: "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate *Page 5 
property is not traceable." Cleta claims that Gary failed to properly trace his separate property received via the inheritance from his mother.[3]
 {¶ 15} Ohio courts have held that oral testimony without documentary evidence may suffice to identify specific property as the separate property of one spouse.
 {¶ 16} In Guenther v. Guenther (Oct. 19, 1994), 9th Dist. No. 2827, 1994 Ohio App. LEXIS 4733, the court held the husband's testimony that he had $20,000 in a savings account at the time of the parties' marriage was sufficient to support the trial court's finding that he had that amount in the account when they married. However, because he testified that the balance had gone up and down during the marriage, the court held that the trial court erred in awarding him $20,000 as separate property. Id. at *5-*6.
 {¶ 17} In Fisher v. Fisher, 2d Dist. No. 20398, 2004-Ohio-7255, the court held:
 {¶ 18} "* * * The proponent [of a claim for separate property] must satisfy two burdens. First, that the property satisfies one of the six definitions of separate property in R.C. 3105.171(A)(6)(a). Second, if it has been commingled, that the property can be traced to its prior separate identity. * * * Oral testimony as evidence of the separate nature of the property, without documentary proof, may or may not be sufficient to carry the burden." Id. at ¶ 9. (Citations omitted.)
 {¶ 19} In Reese v. Reese, 3d Dist. No. 14-04-16, 2004-Ohio-4017, where the husband testified concerning how a deposit account was funded, the court held his *Page 6 
testimony was sufficient to support the trial court's finding of separate property. Id. at ¶ 12-13. The court held: "[The husband's] testimony clearly supports the trial court's finding that the Farmer's account was funded solely by the accrued compensation." Id. at ¶ 12.
 {¶ 20} In Wylie v. Wylie (May 30, 1996), 4th Dist. No. 95CA18, 1996 Ohio App. LEXIS 2341, the wife testified that her investments were funded by an inheritance, and that she had kept them separate and apart from the parties' general savings. She had no documentary evidence because the bank had destroyed the records pertaining to her initial investments. Based on her testimony alone, the court held there was competent, credible evidence on which the trial court determined her investments were traceable to her inheritance.
 {¶ 21} Finally, this Court addressed the same argument inMatic, supra. In that case we held:
 {¶ 22} "The question now becomes what does tracing require? Appellant seemingly argues that tracing of funds requires physical documentation such as bank statements. We disagree. Certainly, it would be unreasonable to make it the exclusive method of proof.
 {¶ 23} "Furthermore, it is important to remember that the party seeking to establish the separate property has the burden of proof only by a preponderance of the evidence to trace the asset. (Citation omitted.) We are unaware of any authority which would require the court to ignore compelling circumstantial evidence in determining whether this minimal burden of proof has been met." Id. at *9. *Page 7 
 {¶ 24} In Matic we held the following evidence supported the trial court's conclusion that the wife's funds had been used toward the down payment on the parties' marital home: 1. a few days before the parties' marriage, the wife had the amount she claimed as her contribution in her own bank accounts; 2. the husband admitted that part of the down payment came from the wife; and 3. the wife testified these funds were used as part of the down payment. Id. at *7-*9.
 {¶ 25} In the instant case, the evidence at trial was sufficient to show that the funds deposited in accounts 21-1011911 and 21-1012238 were derived from Gary's inheritance. The deposits were closely related in time and amount to support Gary's testimony that the source of the funds was his mother's inheritance. Even Cleta acknowledged that the funds were mostly comprised of the inheritance money. No other funds were deposited in these accounts. Although the parties made withdrawals from these accounts, they did not add any additional assets or funds to the mix. Therefore, Gary met his burden of proof and was not required to provide additional documentation. In fact, there was none he could provide beyond the original inheritance checks. To that end, the testimony of Gary's brother Roger was sufficient to establish the nexus between the deposits and the inheritance distributions. We cannot say that the separate property determinations made by the trial court as to these two accounts were against the manifest weight of the evidence.
 {¶ 26} Cleta's first assignment of error is without merit.
 {¶ 27} Cleta's second assignment of error states: *Page 8 
 {¶ 28} "THE TRIAL COURT'S FINDING THAT THE FINANCE CHARGES ON THE DISCOVER CARD AND CITI CARD ARE MARITAL DEBTS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 29} The determination of debt as marital or separate is reviewed under a manifest weight of the evidence standard of review. Papas v.Papas (Dec. 17, 1997), 9th Dist. No. 18247, 1997 Ohio App. LEXIS 5573, *4. A spouse seeking to have a debt classified as the separate liability of the other spouse has the burden to prove the debt was the separate obligation of the other spouse. Id. at *5.
 {¶ 30} Following the hearing on temporary orders, Gary was ordered to pay the minimum monthly payment on all joint credit card obligations. Gary failed to do so. At the time of the temporary orders hearing, the Discover Card balance was $6,843.91. The Citi Card balance was $2,365.11. The court found both balances to be marital debt. Cleta and Gary both continued to use these charge accounts for their personal benefit after the temporary orders hearing. The court found Cleta charged $958.10 on the Citi Card and $880.92 on the Discover Card. It likewise found Gary charged $1,893.75 on the Discover Card and $234.00 on the Citi Card. The court allocated these additional charges to each party as separate debt respectively.
 {¶ 31} Cleta challenges the trial court's allocation of the finance charges associated with these credit cards. The trial court ordered the finance charges of $1,144.07 on the Discover Card and $611.11 on the Citi Card were to be divided equally as marital debt. The court reasoned that "* * * the majority share of the [Discover Card and Citi Card] debt was incurred prior to the temporary order and both parties *Page 9 
continued to use the credit card after the filing of the Complaint and after the temporary order of support."
 {¶ 32} Cleta claims that "[a]bsent [Gary's] failure to make the payments, the finance charges would not exist." However, there is nothing in the record to support this allegation except a similar claim by Cleta at trial that this is a factually accurate statement. The trial court reasoned that since the finance charges would have accumulated on the bulk of the balance, which was marital debt, that the finance charge debt should be shared jointly. Despite Cleta's argument, the trial court did not punish her for Gary's failure to pay the minimum payments-it imputed late fees to Gary as his separate debt. The finance charges would have accumulated on the total balance even if Gary had made all the monthly minimum payments. Absent a complete pay-off of the marital debt, the finance charges would have continued to accrue-such is the nature of a credit card.
 {¶ 33} Cleta argued for the first time at oral argument that Gary's failure to make the minimum payments resulted in additional interest for which he should be solely liable. However, Cleta has not directed our attention to any evidence in the record that additional interest became due as a result of Gary's failure to make the minimum payments. Further, Cleta did not argue in her brief on appeal that Gary's non-payment resulted in additional interest. As a result, any error in this regard is waived. App. R. 12(A)(2). The trial court's decision was supported by competent and credible evidence.
 {¶ 34} Cleta's second assignment of error is without merit.
 {¶ 35} Cleta's third assignment of error states: *Page 10 
 {¶ 36} "THE TRIAL COURT'S FINDING THAT APPELLANT'S MARITAL INTEREST IN THE MARITAL RESIDENCE IS $26,947.43 IS CONTRARY TO LAW."
 {¶ 37} As indicated under the first assignment of error, the designation of property as marital or separate is reviewed under a manifest weight of the evidence standard of review.
 {¶ 38} Gary owned the residence located at 2546 Atlantic Street in Warren, Ohio, prior to the parties' marriage in 1982. The parties agreed that at the time of their marriage, the value of the residence was $69,000. The parties further agreed that at the time of the legal separation, the value of the residence was $148,000. At the time of the legal separation, there was a mortgage on the property in the amount of $19,942.57.
 {¶ 39} Cleta claims that the trial court erred in failing to divide the equity portion of the marital interest in the real estate equally. According to Cleta, the trial court failed to give her credit for the appreciation that accrued during the marriage of the parties. This is true. However, the trial court held that the separate property identity of the residence prior to the marriage was maintained throughout the marriage despite the fact that in 1999, Gary executed a joint and survivorship deed with Cleta.
 {¶ 40} The most common method for transfer of separate property to marital property is through an inter vivos gift. Osborn v. Osborn, 11th Dist. No. 2003-T-0111, 2004-Ohio-6476, at ¶ 31. There are three essential elements of an inter vivos gift: (1) the donor's intent to make an immediate gift, (2) delivery and (3) acceptance. Id. at ¶ 31-32. The trial court specifically found the first element was lacking: "* * * there was no donative intent on the part of Defendant to transfer a one-half interest in the marital residence by the Survivorship Deed. The Court finds that the property located at 2546 *Page 11 
Atlantic Street, Warren, Ohio is the separate property of Defendant." Although there is typically a presumption that a transaction beneficial to a family member is a gift, Id. at ¶ 33, the trial court did not feel that presumption applied here. Following that determination, Cleta was not entitled to an equal share in any passive appreciation value of the residence during the marriage.
 {¶ 41} The trial court found that the marital interest in the residence was the pay down on the first and second mortgages during the marriage in the combined amount of $26,947.43.
 {¶ 42} The reduction in the amount of mortgages on the marital residence during the marriage by payment of marital funds is marital property subject to equitable division. Ray v. Ray, 9th Dist. No. 03CA0026-M, 2003-Ohio-6323, at ¶ 8; see, also, Polakoff v. Polakoff
(August 4, 2000), 11th Dist. No. 98-T-0163, 2000 Ohio App. LEXIS 3542, *16. The trial court gave Cleta credit for the pay down of the mortgages on the property during the marriage in the amount of $26,987.43.
 {¶ 43} The trial court was not presented with enough evidence as to value to afford Cleta credit for the improvements made to the home during the marriage. The court stated that it "* * * did not have sufficient credible evidence regarding the value of the improvements made to the marital residence and therefore does not asses[s] a value to the improvements."
 {¶ 44} Both parties cite to Munroe v. Munroe (1997),119 Ohio App.3d 530, to support their respective positions. We do not findMunroe applicable in the present case. In Munroe, the Eighth District Court of Appeals extensively discussed the formula for a trial court to use when dividing a marital asset which had originated as the *Page 12 
separate property of one spouse. Id. We are not faced with those circumstances here. In this case, there is no marital portion of the property to divide because the trial court found that the residence in question retained its separate property identity even throughout the marriage. The trial court found, based on Gary's testimony, that he did not intend to transfer a one-half interest in this property to Cleta. Gary testified that although Cleta's name was added to the deed of the Atlantic Street residence in 1999, he did not intend to gift any portion of that property to Cleta. Gary asserted that the reason he added Cleta's name was because he was tired of hearing her complain that her name was not on the deed. Based on this testimony, the trial court found that Gary did not intend to transfer any interest in the property to Cleta and therefore classified the Atlantic Street residence as the separate property of Gary even throughout the marriage.
 {¶ 45} R.C. 3105.171 defines "separate property" as "* * * [a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." It includes "* * * passive income and appreciation acquired from separate property by one spouse during the marriage." Following the designation of the Atlantic Street residence as separate property, Cleta would only be entitled to appreciation through active contributions of one party or the other. Middendorf v. Middendorf (1998), 82 Ohio St.3d 397, 401. The evidence regarding improvements was inconclusive as to a corresponding increase in market value so therefore, no appreciation based on improvements was assigned. The only other available appreciation is passive, by virtue of the general market economics. This is not due to the efforts of one spouse or the other and therefore is not subject to division and *Page 13 
remains the separate property of Gary. Id. "If the evidence indicates that the appreciation of the separate property is not due to the input of [one spouse or the other's] labor, money or in-kind contributions, the increase in the value * * * is passive appreciation and remains separate property." Id. Based on the record, we cannot say the trial court's separate property designation was against the manifest weight of the evidence.
 {¶ 46} Cleta's third assignment of error is without merit.
 {¶ 47} Cleta's fourth assignment of error states:
 {¶ 48} "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO AWARD APPELLANT MONIES FOR APPELLEE'S ARREARS ON UTILITY PAYMENTS BETWEEN THE TIME OF TRIAL AND THE JUDGMENT ENTRY FINALIZING THE PARTIES' LEGAL SEPARATION."
 {¶ 49} A trial court has broad discretion to determine matters related to spousal support. Mahon v. Mahon (Mar. 11, 1999), 11th Dist. No. 98-T-0050, 1999 Ohio App. LEXIS 938, *10. A reviewing court cannot substitute its judgment for that of the trial court unless the trial court has abused its discretion. Id. at *10-*11.
 {¶ 50} Gary was required to pay the utility bills for the marital residence as ordered by a magistrate on April 8, 2005. The trial court found that Gary owed Cleta $1,798.70 in part for past utility bills paid by Cleta during the period following the temporary orders until the date of the trial. Cleta asserts on appeal that the trial court should have further extended this order by mandating Gary pay Cleta for the utility bills incurred between the time of the final hearing in this matter and the date of the final judgment entry. The final hearing was held on December 19 and 21, 2005. The *Page 14 
judgment entry was dated January 26, 2006 and was filed by the clerk on February 1, 2006. During the interceding time, there were no additional motions filed or evidence supplemented which would have provided the court with values to assign during this interim period. As such, the trial court was limited in ruling on that which it had before it at the conclusion of the trial. The trial court cannot be expected to foretell Cleta's utility expenses during this period of delay. We cannot say that the trial court abused its discretion in failing to designate payment of utility bills that did not exist at the time of trial.
 {¶ 51} Cleta's fourth assignment of error is without merit.
 {¶ 52} Cleta's fifth assignment of error states:
 {¶ 53} "THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO INCLUDE APPELLEE'S INCOME FROM HIS OUTSIDE EMPLOYMENT IN ITS CALCULATION OF SPOUSAL SUPPORT."
 {¶ 54} This assignment of error likewise is reviewed pursuant to an abuse of discretion standard. Mahon, supra. Abuse of discretion implies that the court's attitude is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. "A reviewing court cannot substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court has abused its discretion." Mahon, at *10-*11.
 {¶ 55} Cleta claims that the trial court did not lend any credence to the evidence adduced at trial that Gary had additional sources of income other than his mainstay of employment. Other than some unusually high cell phone bills, there was no documentary evidence to support Cleta's allegations. Cleta acknowledges the same in *Page 15 
her appellate brief, yet urges this court that the record evidences some untoward employment or means of income for Gary as illustrated by Cleta's testimony. Witness credibility is better determined by the trial court. Hvamb v. Mishne, 11th Dist. No. 2002-G-2418, 2003-Ohio-921, at ¶ 18. "The trial court * * * is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections in order to assess their credibility and weigh the testimony." Id.
 {¶ 56} Within the confines of this limited review, we cannot say that the trial court abused its discretion in failing to assign any additional income to Gary. Cleta's testimony was vague. She testified that the woman whose telephone number appeared often on Gary's cell phone bill was a "known crack cocaine [p]rostitute." However, Cleta's only connection between the telephone calls and additional income or business allegation was her characterization that "[h]e would not be spending money like this and on phone calls if it wasn't to do with business, and he wouldn't be up all night long." Cleta admitted that she had never seen evidence of any additional money being earned by Gary as a result of these phone calls. Cleta also attempted to create a connection between the cell phones and the most-recently called numbers to establish the existence of Gary's additional business. These tenuous and strained connections do not rise to the level of proof as Cleta claims. Cleta's testimony may prove that Gary was engaged in some type of incongruous activity. However, it does not establish that he was operating a business. Furthermore, even if the trial court had made the leap from Cleta's testimony to imputing additional income to Gary for the operation of this business, there was no testimony or evidence whatsoever that could establish a value *Page 16 
for the trial court to assign as income. The trial court did not abuse its discretion in failing to include any additional income in the calculation of spousal support.
 {¶ 57} Appellant's fifth assignment of error is without merit.
 {¶ 58} For the reasons stated in the Opinion of this Court, the assignments of error are without merit, and it is the judgment and order of this Court that the judgment of the Trumbull County Court of Common Pleas, Division of Domestic Relations is affirmed.
DIANE V. GRENDELL, J., concurs, COLLEEN MARY OTOOLE, J., concurs in judgment only.
[1] On January 3, 2005, Cleta removed $9,962.33 from account number 21-1011911 and $4,981.37 from account number 21-1012238. Therefore, Cleta was ordered to pay to Gary the total of $14,943.70 representing the cumulative amounts withdrawn by Cleta from the separate property of Gary.
[2] According to Roger, Gary actually received more than $150,000 in inheritance money.
[3] According to Cleta, documentary proof of each step in the separate property chain is required to succeed on a separate property claim. However, Cleta failed to support this theory with any precedent. The cases cited by Cleta do not impose such an affirmative duty. Rather, each case cited upholds a rejection of a separate property claim for lack of evidence, testimonial or otherwise. See, Peck v. Peck (1994),96 Ohio App.3d 731; see, also, Williams v. Williams (1996),116 Ohio App.3d 320; Zeefe v. Zeefe (1998), 125 Ohio App.3d 600. *Page 1