OPINION
{¶ 1} In the instant appeal, submitted on the record and briefs of the parties, appellant, Mary Brady ("Beth"), appeals the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, terminating her marriage to appellee, Mark Brady, and dividing the marital estate. For the reasons that follow, we affirm the judgment of the lower court. *Page 2 
 {¶ 2} The parties were married on July 1, 2003, in Myrtle Beach, South Carolina. Both had been previously married and had children from these prior marriages. No children were born as issue of the marriage. Mark is employed as a Chiropractic Physician with an office in Munroe Falls, Ohio. Beth is employed by Kent State University.
 {¶ 3} Problems arose during the course of the marriage, which resulted in the parties separating and reconciling on several occasions. The parties, being unable to resolve their differences, eventually separated permanently and have been living separate and apart since July 10, 2006.
 {¶ 4} Both prior to and during the course of the marriage, the parties acquired certain properties, including what eventually became the marital residence located at 326 Manning Road, in Suffield Township, Ohio; 1616 Howe Road, in Brimfield Township, Ohio; and 1502 Parsons Drive, in Brimfield Township, Ohio. In addition to the aforementioned properties the parties also acquired and later sold approximately 37 acres of vacant property located on Scotts Corner Road in Palmyra Township, Ohio. This property was purchased in June 2000, for $90,000, and sold in May 2005, with $138,151.76 being the proceeds of that sale. Though this property was acquired prior to the marriage, the parties, who were already experiencing marital difficulties resulting in an earlier separation, stipulated and agreed that the proceeds would be divided 75.65% to Beth and 24.35% to Mark, pursuant to their respective contributions toward the down payment to purchase this property.
 {¶ 5} On July 20, 2006, Mark filed a Complaint for Divorce, citing as grounds unspecified misconduct and incompatibility. The complaint requested temporary and *Page 3 
permanent spousal support, attorney fees, and an equitable division of the marital property.
 {¶ 6} On August 30, 2006, Beth filed her Answer and Counterclaim in which she agreed that the parties were incompatible, and alleged as her counterclaim unspecified misconduct and incompatibility. Beth likewise requested temporary and permanent spousal support, attorney fees, and an equitable division of the marital property.
 {¶ 7} On September 1, 2006, Beth petitioned the court for an ex parte restraining order, which was granted by the trial court. The order requested, in relevant part, that Mark be restrained from creating or incurring "debt (such as a credit card) in the name of the Defendant or in the parties' joint names or [to] cause a lien or loan to be placed against any of their real or personal property."
 {¶ 8} On November 28, 2006, a hearing was held before the magistrate. At issue during the hearing was the division and disposition of the Manning property, as well as the division of certain debt incurred by the parties, including lines of credit and credit card debts.
 {¶ 9} On January 5, 2007, the magistrate issued his decision. Beth filed timely objections to the magistrate's decision on January 9, 2007, and filed amended objections thereto on January 11, 2007. Mark filed his brief in response to Beth's objections on January 18 and 24, 2007, respectively. Beth subsequently filed a supplemental brief in support of her objections to the magistrate's decision on May 7, 2007.
 {¶ 10} On May 9, 2007, a hearing was held on Beth's objections to the magistrate's decision. *Page 4 
 {¶ 11} On June 14, 2007, the trial court entered its judgment, overruling Beth's objections, adopting the magistrate's decision in full, and granting a divorce.
 {¶ 12} Beth timely appeals the trial court's judgment, assigning the following as error for our review:
 {¶ 13} "[1.] The trial court abused its discretion when it adopted the magistrate's finding that the two credit card [sic] of the husband are marital debts to be divided equally between the parties.
 {¶ 14} "[2.] The trial court abused its discretion when it adopted the magistrate's finding that the wife is entitled to only $12,173.00 as her share of equity in the marital residence."
 {¶ 15} For ease of discussion, we will address Beth's second assignment of error first. In her second assignment of error, Beth argues that the trial court erred and abused its discretion when it adopted the magistrate's finding that the entire premarital equity in the Manning property was the separate property of Mark.
 {¶ 16} It is well-settled that trial courts have "broad discretion to determine what property division is equitable in a divorce proceeding."Cherry v. Cherry (1981), 66 Ohio St.2d 348, at paragraph two of the syllabus. Thus, "[an] appellate court will only reverse such [property divisions and] distributions if the trial court abused its discretion."Crawford v. Crawford (Dec. 31, 1991), 11th Dist. No. 90-A-1555, 1991 Ohio App. LEXIS 6340, at *5. Furthermore, "[w]hen reviewing an appeal from a trial court's decision to accept or reject a magistrate's decision, an appellate court must determine whether the trial court abused its discretion." Hayes v. Hayes, 11th Dist. No. 2005-L-138,2006-Ohio-6538, at ¶ 10 (citation omitted). An abuse of discretion standard is also the *Page 5 
appropriate general standard to apply in reviewing the trial court's adoption of a magistrate's decision. D.A.N. Joint Venture, III, L.P. v.Armstrong, 11th Dist. No. 2006-L-089, 2007-Ohio-898, at ¶ 24 (citations omitted). "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 (citation omitted).
 {¶ 17} "A trial court's characterization of property as either marital or separate that involves factual questions is reviewed under a manifest weight of the evidence standard." Moser v. Moser, 11th Dist. No. 2006-P-0047, 2007-Ohio-4109, at ¶ 20 (citation omitted). A trial court's factual findings are entitled to a presumption of correctness, and "`[i]f there is some competent, credible evidence to support the trial court's decision, there is no abuse of discretion,' and * * * the trial court's decision will not be found to be against the manifest weight of the evidence." Phillips v. Phillips, 11th Dist. No. 2006-A-0037,2007-Ohio-3368, at ¶ 32 (citations omitted).
 {¶ 18} "Separate property" is defined, in relevant part, as "[a]ny real * * * property or interest in real * * * property that was acquired by one spouse prior to the date of the marriage." R.C.3105.171(A)(6)(a)(ii) (emphasis added). "A party claiming separate property is burdened to prove the independent nature of the property by a preponderance of the evidence." Gosser v. Gosser, 11th Dist. No. 2006-L-0029, 2007-Ohio-3201, at ¶ 12; Peck v. Peck (1994),96 Ohio App.3d 731, 734. "[T]he law of Ohio is that traceability of an asset is the major means for determining whether an asset is separate or marital property." Price v. Price, 11th Dist. No. 2000-G-2320, 2002-Ohio-299, at ¶ 10 (citations omitted). "Oral testimony as evidence of the separate nature of *Page 6 
property, without documentary proof, may * * * be sufficient to carry the burden." Fisher v. Fisher, 2nd Dist. No. 20398, 2004-Ohio-7255, at ¶ 9 (citation omitted); accord Maloney v. Maloney, 160 Ohio App.3d 209,2005-Ohio-1368, at ¶ 23; Gosser, 2007-Ohio-3201, at ¶ 18.
 {¶ 19} The evidence adduced at trial established that the Manning property was purchased on September 10, 2001, almost two years prior to the date of the marriage. According to the undisputed testimony of Mark, he made the down payment on the Manning property from his premarital property, and made all payments on the mortgage, taxes, and insurance relative to the Manning property both prior to and during the marriage. The evidence revealed that the parties kept separate bank accounts both prior to and during the marriage, except for an approximately three month period, starting in March 2006, during which time the parties opened a joint banking account for receipt and distribution of their incomes during a failed attempt at reconciliation.
 {¶ 20} Beth did not dispute Mark's testimony, stating on cross-examination, that Mark was responsible for any cash outlays relative to the mortgage, utilities, and improvements on the Manning Road property, prior to the date of the marriage from his "personal" account.
 {¶ 21} With regard to the Manning property, the parties also stipulated that the current valuation of the property was $240,000; the valuation at the time of the marriage was $205,000; the valuation of the property at the time of purchase was $170,000. They further stipulated that the current amount of equity in the property after deducting the first and second mortgages was $77,094, of which $52,750 was considered premarital and $24,344 was marital. It is well-settled that "[w]hen a stipulation of facts is *Page 7 
handed up by the adversaries in a case," such stipulated facts are binding not only upon the trier of facts, but also to the parties themselves. DiSanto v. Safeco Ins. Co. of Am., 168 Ohio App.3d 649,2006-Ohio-4940, at ¶ 53 (citation omitted).
 {¶ 22} Based upon these stipulations, the trial court and the parties were thus bound to accept that the down payment for the Manning property, based upon the sales price of $170,000 less the first mortgage of $152,500, was $17,500, and that the appreciation in the Manning property prior to the marriage totaled $35,000, based upon the stipulated appraisal valuation of $205,000 as of the date of the marriage. The parties further stipulated that, from the time of the marriage until the time of the divorce, the Manning property increased in value to $240,000, but the parties had also taken out a second mortgage on the property, which resulted in a total mortgage debt of $162,906 at the time of the divorce, resulting in a net increase of $24,344.[1]
 {¶ 23} Taking the undisputed evidence and stipulations together, we cannot conclude the trial court abused its discretion in finding that Mark had demonstrated, by a preponderance of the evidence, that the premarital equity in the Manning property was the result of the investment of his separate property.
 {¶ 24} "Once it is proven that specific property was the separate property of one of the spouses at * * * the time of the marriage, the burden shifts to the other spouse to prove, by clear and convincing evidence, that the property, or some interest therein, has been given to the other spouse." Snyder v. Snyder, 2nd Dist. No. 2002-CA-6, 2002-Ohio-2781, at ¶ 22. "Clear and convincing evidence is that measure of proof `which will *Page 8 
produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re McLean, 11th Dist. No. 2005-T-0018, 2005-Ohio-2576, at ¶ 28, citing Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. "It is more than a preponderance of the evidence, but not to the level of beyond a reasonable doubt." Id.
 {¶ 25} Beth argues that the undisputed evidence showing that the deed was issued as a joint and survivorship deed, along with the fact that the first mortgage was taken out in both of their names at the time of the purchase, was sufficient evidence to rebut the court's finding that Mark's investment of his separate premarital funds into the Manning property had been transmuted into marital property, or that he had made a valid inter vivos gift of the Manning Property. With regard to transmutation of separate property, it has been held that "[u]nless the financial history of an asset cannot be traced, there is no commingling or transmutation of assets in Ohio." Fincannon v. Fincannon (Aug. 7, 1997), 7th Dist. No. 231, 1997 Ohio App. LEXIS 3604, at *5 (citation omitted). In the instant case, the trial court properly determined that Mark's separate property was traceable. Therefore, transmutation does not apply.
 {¶ 26} That said, courts in Ohio have also held that "a husband can convert separate property into marital property by making an inter vivos gift to his wife." Snyder, 2002-Ohio-2781, at ¶ 19, citing Helton v.Helton (1996), 114 Ohio App.3d 683, 685.
 {¶ 27} In order to prove a valid inter vivos gift has been made, Beth had the burden of proving, by clear and convincing evidence, that Mark, in titling the Manning property with a joint and survivorship deed, showed "an intention * * * to transfer the title and right of possession of the particular property to [Beth] then and there and * * * in *Page 9 
pursuance of such intention, a delivery by [Mark] to [Beth] of the subject-matter of the gift to the extent practicable or possible, considering its nature, with relinquishment of ownership, dominion and control over it." Id. (citation omitted).
 {¶ 28} Beth argues that the fact that the property was placed into a joint and survivorship deed, and the fact that both parties were named as debtors on the first mortgage, is clear and convincing evidence of Mark's intention to make a gift of his premarital investment in the Manning property to her. We disagree.
 {¶ 29} With regard to the Manning property, the magistrate made the following relevant findings: "The Magistrate finds that the property was purchased as an unmarried couple and that as [a] joint tenancy there is a presumption that each party is entitled to a divided one half interest of the property. The fact that it was a survivorship deed indicates only that the parties meant to bestow an entire interest in the property only upon the death of themselves to the other. The parties are not entitled to the one half divided interest if there is a further showing of contribution of one more than the other. * * * [I]t is clear from the evidence that [Mark] contributed the down payment and all of the funds towards [sic] the payments including the mortgage, taxes, insurance, repairs and improvements prior to the marriage * * *."
 {¶ 30} Since the aforementioned findings were supported by competent, credible evidence, we cannot say that the trial court abused its discretion in adopting the magistrate's conclusion that Beth had not met her evidentary burden. This court and others have repeatedly held that title is not determinative of whether property is separate or marital and "a trial court is not bound by the form of title in distributing property." DiNunzio v. DiNunzio, 11th Dist. No. 2005-L-124,2006-Ohio-3888, at ¶ 62 *Page 10 
(citations omitted), accord Price, 2002-Ohio-299, at ¶ 10 ("[T]he Legislature enacted R.C. 3105.171 to clarify that the form of ownership was not the determinative factor" in deciding whether an asset is marital or separate property.); see also, Wells v. Wells (Dec. 30, 1999), 2nd Dist. No. 99-CA-0010, 1999 Ohio App. LEXIS 6349, at *5 ("The fact that title to the property is jointly owned * * * does not determine whether the property is marital or separate.") (citation omitted).
 {¶ 31} Moreover, "there is no legal authority in Ohio that supports the proposition that one spouse's willingness to co-sign for a mortgage debt on a parcel of real property, without more, becomes `consideration' that converts the other spouse's traceable separate property down payment into a contractually converted marital asset. Indeed, such a proposition would be misplaced and would contravene the case law of Ohio and the Legislature's traceability concept in every case involving third-party financing." Price, 2002-Ohio-299, at ¶ 13.
 {¶ 32} The magistrate noted an additional reason for finding that Mark did not intend to make a gift of the Manning property to Beth by virtue of the names on the deed and the mortgage. The court noted that "the acreage in Palmyra Township was [also] purchased on land contract as a joint tenancy prior to the marriage," and that "the mortgages on these properties [were] in the joint names of the parties." The magistrate further noted that, despite this form of ownership and financing, the equity from the sale of the Palmyra Township property was divided 75% to Beth and 25% to Mark, "based upon the contributions of the respective parties during their joint ownership." Based upon this, the Magistrate reasonably found that there was no "meeting of the two minds * * * to treat the [respective] property appreciations different from one another." *Page 11 
 {¶ 33} In the trial court's adoption of the magistrate's decision, it noted, based upon the aforementioned findings, that "more so than other cases where parties own property in their joint names, * * * equity and fair play demands that the court apply * * * the * * * parties' equities in the * * * pieces of real estate that they owned at the time of the trial of this cause. The Court cannot completely overlook parties' prior history in dividing the real estate equity."
 {¶ 34} It is well-settled that, under R.C. 3105.171, "a court may issue `any orders * * * that it determines equitable.'" DiNunzio,2006-Ohio-3888, at ¶ 62 (citation omitted). Based upon the evidence, we cannot conclude that the trial court abused its discretion in awarding Mark the premarital portion of the equity in the Manning property in its entirety.
 {¶ 35} Beth's second assignment of error is without merit.
 {¶ 36} In her first assignment of error, Beth argues that the trial court abused its discretion in concluding that debt incurred on two credit cards in Mark's name was marital debt to be divided equally among the parties. We disagree.
 {¶ 37} The Ohio Revised Code defines "marital property" alternatively as "[a]ll real and personal property that currently is owned by either or both of the spouses * * * and that was acquired by either or both of the spouses during the marriage," or "all interest * * * that either or both of the spouses currently has in any real or personal property * * *." R.C. 3105.171(A)(3)(a)(i) and (ii). "During the marriage," means "the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation." R.C. 3105.171(A)(2)(a). "[A] trial court has the discretion to equitably divide marital property, including marital debt." *Page 12 Rice v. Rice, 11th Dist. Nos. 2006-G-2716 and 2006-G-2717,2007-Ohio-2056, at ¶ 40, citing Longo v. Longo, 11th Dist. No. 2004-G-2556, 2005-Ohio-2069, at ¶ 109. Although, "[t]here is no presumption * * * that marital property be divided equally upon divorce * * * a potentially equal division should be the starting point of the trial court's analysis." Cherry, 66 Ohio St.2d 348, at paragraph one of the syllabus.
 {¶ 38} The determination of debt as marital or separate is reviewed under the manifest weight of the evidence standard of review."Gosser, 2007-Ohio-3201, at ¶ 29 (citation omitted). The burden is on the party seeking to have a debt classified as a separate liability to demonstrate, by a preponderance of the evidence, that such debt was the separate obligation of the other spouse. Papas v. Papas (Dec. 17, 1997), 9th Dist. No. 18247, 1997 Ohio App. LEXIS 5573, at *5 (citation omitted).
 {¶ 39} We find no abuse of discretion in the trial court's judgment that the debt incurred was marital debt. Despite the fact that the credit cards in question were in Mark's name, the court found that "these credit cards were used in part for maintenance and improvements on the various realty obtained by the parties, and therefore, * * * are marital and shall be divided equally."
 {¶ 40} "A reviewing court cannot reverse a judgment as being against the manifest weight of the evidence unless that judgment `is so manifestly contrary to the natural and reasonable inferences to be drawn from the evidence as to produce a result in complete violation of substantial justice.'" Id. at *4 (citation omitted).
 {¶ 41} In the instant case, the trial court chose to believe Mark's testimony that the vast majority of the credit card debt went toward maintenance and mortgage payments for the properties held jointly by the parties, including the marital portion of *Page 13 
the equity in Manning Road, and the Howe Road rental property, which the court ordered to be sold and the proceeds, if any, divided evenly between the parties. This was not an unreasonable conclusion, based upon the parties' respective incomes and obligations, and the evidence (in the form of credit card statements) and undisputed testimony that a major part of the approximately $19,000 in credit card debt incurredprior to the parties separation was incurred in contemplation of preparing the Manning Road property for sale.
 {¶ 42} Beth provided no evidence to rebut Mark's testimony that the vast majority of the $10,000 debt incurred subsequent to their separation was related to the upkeep and mortgage on the Howe and Manning Road properties. Furthermore, there was undisputed evidence that Mark had continued to make car payments on behalf of Beth's son, for which he had taken a loan, during this period, which had not yet been reimbursed. Thus, we cannot conclude that the trial court abused its discretion in ordering this debt be divided equally.
 {¶ 43} Beth's first assignment of error is without merit.
 {¶ 44} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed. Costs to be taxed against appellant.
MARY JANE TRAPP, J., TIMOTHY P. CANNON, J., concur.
[1] Our calculations result in the amount of marital equity in the Manning property being $24.594. However, the difference between this court's calculation and the trial court's calculation is $250, which if divided evenly between the parties, would result in an award of $125 more for Beth. Within the context of the division of the entire marital estate, this difference in the amount awarded is de minimis. *Page 1